Verdict for the United States.

---

## Case No. 15,110.

### UNITED STATES v. FIVE CASES OF CLOTH.

[2 N. Y. Leg. Obs. 84.]

District Court, S. D. New York.　Oct. 5, 1842.

NEW TRIAL—VERDICT AGAINST EVIDENCE.

Where a verdict was rendered turning upon the credibility of the witnesses, and it appeared that at the trial all the evidence was fully and fairly before the jury, and that they had been charged that the consideration of the credibility of the testimony belonged exclusively to them, the court refused to grant a new trial. It is only in cases imputing gross inattention, prejudice, or misconduct on the part of a jury that the court will interfere to disturb their verdict.

This was a motion for a new trial on a case made by the defendant [William Broadbent], and was submitted on written points. The circumstances of the case, and the point upon which his honor's opinion was sought, sufficiently appear in the adjudication.

O. Hoffman, for the United States.
S. Cambreleng, for defendant.

BETTS, District Judge. The defendant applies upon a case made to set aside the verdict rendered in this cause, and for a new trial, because the verdict is against evidence.

I am satisfied, from a reperusal of the proofs, that if the testimony is entitled to full

credit, the verdict is clearly against the weight of evidence, and ought for that cause to be set aside. Kohne v. Insurance Co. of North America [Case No. 7,921]; Judiciary Act, Sept. 24, 1789, § 17 [1 Stat. 73].

It appears to me, also, that there is no proof in the case which could shake my faith in the witnesses for the claimant; and, had it been submitted to my judgment as matter of fact, I should have found for him.

With this distinct statement of the position of the case, the point arises for decision whether the court is called upon or can properly interfere to disturb the finding of the jury. The gist of the information was that the goods were undervalued upon the invoices, with intent to evade or defraud the revenue. In reply to the testimony on the part of the United States, the claimant offered evidence to prove that he purchased the goods in England, and that they were charged on the invoices at the actual cost prices, and also that they were invoiced at their true market value abroad. The vendors of the goods were examined on commission, and testified that they sold the goods to the claimant at the prices stated in the invoices, and that he was the bona fide purchaser and owner of them. Each of these witnesses also swore the goods were charged at their true market value, and that like goods at the time could have been purchased at the same places at these prices.

Testimony was presented to the jury, on the other hand, to show that the goods were very greatly below the foreign market value, and a witness called by the claimant, although he rated the goods much lower than the public appraiser, yet, examining them two years after they were exported, appraised the market value at the time of their purchase at 19 per cent. above the invoices.

The points submitted to the jury were, whether the testimony established the cost prices of the goods, and they were charged by the court that if the goods were actually purchased by the claimant at the invoice prices, then they could not be condemned, whether that price corresponded with the market value or not. So, also, the charge was explicit that, if the goods were invoiced at their fair market value, the claimant would be entitled to a verdict, unless the government proved they had been purchased at higher prices; and the jury were instructed that the testimony on the part of the claimant, taken on the spot where the transactions occurred, being direct and explicit on both points in his favor, entitled him to a verdict if the witnesses were believed. The decision of the jury turned then upon the credibility of the witnesses swearing directly for the claimant, and that point was given to the consideration of the jury as belonging exclusively to them, with the instruction that the depositions were to be read and received with like effect as if the witnesses had made the same statement in open court.

No exception is taken to the charge of the court, and the single question is, whether the court, upon its own judgment of the bearing and credibility of the testimony, will set aside the decision of the jury upon that very point.

The courts have proceeded with great caution in granting new trials upon allegations that the verdicts are without or contrary to evidence, or against its weight. It will not be done because the case is a hard one (3 Burrows, 1306); nor that the verdict is contrary to the inclination of the court (2 Bin. 495; 4 Maule & S. 192); or opinion of the judge who tried the cause (3 Johns. 271; 3 Taunt. 232; 5 Mass. 353; Ex parte Hurst [Case No. 6,924]; Blagg v. Phœnix Ins. Co. [Id. 1,478]; 3 Bin. 317); nor that it is against the weight of evidence, unless manifestly and palpably so (4 Cow. 426).

The adherence to the finding of the jury in actions of a penal character, or where the question depends on the credit of witnesses, is still more strict, and the verdict will not be disturbed except in some very extraordinary case, importing gross inattention, prejudice, or misconduct on the part of the jury. 2 Bin. 495; Grah. New Trials, 394; U. S. v. Duval [Case No. 15,015]. The witnesses whose testimony was attempted to be impugned had sworn directly to two classes of facts,—the sale prices of goods and their market value. Evidence tending to contradict these witnesses as to the latter fact was submitted to the jury, and, if the jury were satisfied that fact was not correctly given, their testimony upon the other point might also be reasonably placed in doubt. At all events, it was legitimate means of impeachment, and courts must defer to the opinions of juries in matters of fact appropriately within their province to decide.

There is no palpable and flagrant disregard of evidence in this case, evincing any prepossession or prejudice on the minds of the jury. It is at most only allowing, in their estimate of the credibility of witnesses, a greater influence to contradictory testimony than the court might have been inclined to give. The law, however, supposes the jury the more competent tribunal to adjust and dispose of that matter, and I am not inclined to introduce a new rule of adjudication on this point, and assume the right to review the finding of a jury on the single question of the credit of witnesses, when all the evidence bearing upon the inquiry was fully and fairly before them, and they were charged to find their verdict according to their belief or disbelief of the witnesses.

New trial denied.