## Case No. 4,711.

FEARING et al. v. DE WOLF et al.

[3 Woodb. & M. 185.][1]

Circuit Court, D. Rhode Island. June Term, 1847.

---

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

Mr. Potter and R. Green, for plaintiffs.
Blake & Whipple, for defendants.

WOODBURY, Circuit Justice. At the trial of this case I was not expecting a verdict as very probable, for the plaintiffs. And if one was returned for them, I did not anticipate it would be for so large an amount. But no mistake in point of law arose in the rulings at the trial, or in the charge to the jury, which is excepted to by the respondents, and no allegation is made of any misbehavior by or towards the jury. Nor is any affidavit filed of newly discovered evidence. The motion presents then, this naked question—whether, when evidence was offered on both sides, and was so conflicting as to justify an argument on both sides, and to cause delay and difficulty with the jury in deciding on its weight, and when some of it was attacked as incredible, this court can be justified in setting the verdict aside? I think not. It is not the judges, whose office it is to weigh the facts, but the jurors. "Ad questionem facti non respondent judices, ad questionem juris non respondent juratores." 1 Inst. 155b. At the same time it is conceded, that while these two great arms of the state in administering justice have their general boundaries thus truly defined, the court, as the presiding authority, is required to exercise a superintending power over the trial of facts, in order to prevent gross injustice, either by accident or corruption. Hence it becomes the duty of the court in all cases to see that there has not been a mistrial, whether by surprise or an error of law, or accident, or misbehavior of the jury. And in cases where such a mistrial has probably happened, I entertain no doubt of the superintending power of the court to give a suffering party an opportunity to correct what is clearly wrong, whether it has occurred by being against the plain principles of law, or clear or undisputed evidence. U. S. v. Duval [Case No. 15,015]; Cunningham v. Magoun, 18 Pick. 13; Wilkie v. Roosevelt, 3 Johns. Cas. 211; Trask v. Bowers, 4 N. H. 312. This is not done, however, as many suppose, by the court's undertaking to reverse the decision of the jury and enter a judgment against it, making the opinion of the court on the facts paramount and final over that by jurors, but it is by allowing, in such cases of supposed manifest wrong, another trial, so that another jury,—not the court,— may correct any mistake which the last jury, after full hearing, may believe to have been committed in respect to the facts on the first trial. Brown v. Frost, 2 Bay, 126. But there is some danger in this, and in some states, therefore, laws have been passed prohibiting courts from allowing another trial, for this cause alone. And so fastidious and hesitating are some judges not to disturb verdicts, merely on account of the finding, in respect to questionable facts, that it has often been held a verdict ought never to be set aside merely because the judges happen to differ somewhat in their views concerning the facts, from the jury. 18 Pick. 13, 15; 1 Wils. 22; Gibbs v. Hooper, 2 Mylne & K. 353; Alsop v. Commercial Ins. Co. [Case No. 262]; U. S. v. Martin [Case No. 15,731]; Fehl v. Good, 2 Bin. 495; 2 A. K. Marsh. 521; Wendell v. Safford, 12 N. H. 171. Nor usually, if there was evidence on both sides so strong and conflicting as to require it to be argued and weighed with some care. See 7 Metc. [Mass.] 450; 3 Johns. Cas. 213; 5 Mass. 353; 15 Mass. 291; 4 Wend. 423; 2 Wend. 352; 5 Wend. 48; 4 Conn. 426; 11 Conn. 440; [Respublica v. Lacaze] 2 Dall. [2 U. S.] 118; Woodward v. Paine, 15 Johns. 495; Ward v. Center, 3 Johns. 271; 12 Johns. 455; Talcot v. Insurance Co., 2 Johns. 467. See other cases cited in these. Nor where the whole testimony on both sides was circumstantial. Blanchard v. Colburn, 16 Mass. 345; Sharp v. Wickliffe, 3 Litt. [Ky.] 10. Nor merely because another jury in another case, on evidence nearly similar, found the other way. Spong v. Hog, 2 Wm. Bl. 802. That is much like the present case. Nor because the evidence preponderated against the verdict, which is also like this. Swain v. Hall, 3 Wils. 45; Anon. Lofft, 147. Nor where an unimpeached witness testified to facts, but not positively, and the jury found against them. Harding v. Brooks, 5 Pick. 244. Formerly, for reasons soon to be given, courts interfered with more caution in New England, for this cause, than now. And even now, in some states (20 Pick. 288), the courts seem inclined to go farther than appears to me justifiable, consistent with the power and general wisdom of juries, as to facts, and their high integrity. For, though setting aside a verdict is not entering one the other way, yet it certainly is some impeachment of the conduct and correctness of the first jury, and tends to lessen the public confidence in that form of trial. If, on the same testimony, a case has to be tried by two or three different panels before they are able to balance the evidence properly, the system becomes cumbersome and expensive, and goes into ill repute. The presumptions and the leanings of courts, it appears to me, therefore, should be in favor of sustaining verdicts, and never hastily or lightly to set them aside.

There are some other settled limitations and analogies on this subject beside those yet referred to, which seem to deserve much respect, and should operate as a guide in motions like these, or the discretion of judges in this matter will become so loose as to render the trial by jury almost useless. It is, to be sure, a matter of discretion whether to grant or refuse a new trial in cases like this. People v. Supreme Court, of New York, 5 Wend. 114; [McLanahan v. Universal Ins. Co.] 1 Pet. [26 U. S.] 170; 11 Pick. 189. But that discretion must be regulated by fixed rules and just principles, so

as not only to pay due respect to the doings of juries, but to preserve uniformity in the administration of justice, and not to increase that uncertainty in the execution of the law, which is so proverbial, if not to some extent, unavoidable. Hence it has been adjudicated, that though in the exercise of this discretion a verdict may be set aside even when there is evidence on both sides, yet, to set aside a verdict, because against the supposed weight of the evidence, it must be clearly and palpably against it. Deacle v. Hancock, 13 Price, 226; Johnson v. Scribner, 6 Conn. 185; Laflin v. Pomeroy, 11 Conn. 446; Nichols v. Alsop, 6 Conn. 480; Newell v. Wright, 8 Conn. 319. One illustration given as to this, is where the evidence is all one way, except trifling or impeached matter, and the verdict is the other way. 2 Dowl. 711; 6 Conn. 185. So it may be set aside if the evidence was all on one side, in its tendency, no less than origin; and in this and the last case was apparently sufficient. 2 Dowl. 711; State v. Jones, 2 Bay, 520; Wilkie v. Roosevelt, 3 Johns. Cas. 213. Or where it is so strong for one side that the court did not deem it necessary to charge the jury, and the verdict was for the other side. Page v. Pattee, 6 Mass. 450. Or where the judge stops the defendant from putting in evidence because there is so little for the plaintiff, and the jury find the other way. Dunham v. Baxter, 4 Mass. 79. Circumstances like these show at once that there has been a mistrial. But if the mistrial or misfinding is not thus decidedly and manifestly wrong, standing out in bold relief, and clear to almost every impartial mind, and without a labored examination and comparison, the court must refuse to interfere. Because, otherwise, the court would, in every trial, be compelled by such motions to go over the whole evidence on both sides with care and labor, and balance it all in the scales, before coming to a conclusion. It must do it, too, again on a second or third trial, and so on, indefinitely. Miller v. Baker, 20 Pick. 289. This cannot be its duty, nor such the object of its interference, in cases of this character. But it is rather as before and at first intimated, when apparent mistakes have occurred, or gross abuses of power appear probable, to allow another jury an opportunity to correct them, and only then. 8 Pick. 122; 2 Wend. 353; Alsop v. Commercial Ins. Co. [Case No. 262]; 4 Maule & S. 192, 199.

It is a substitute in a proper case and under wise limitations for the old appeal from an inferior court on the facts to a superior court, or the old writ of review, or in case of supposed abuse, a substitute for the old system of attaint by the verdict of another jury. But it strips all these of their frequency for mere litigation or oppression, and allows them only when a mistake or gross abuse seems very clear and prominent on the face of the whole trial. Alsop v. Commercial Ins. Co. [supra]. Even when the evidence seems to have been

stronger for one party than the other, if the evidence is not in writing, but by witnesses whose credit is open to impeachment, or is fairly questioned, it is very doubtful whether the verdict ought to be set aside, provided the jury went on the ground that the testimony was not entitled to belief. They are peculiarly fitted to decide such points. 12 N. H. 171. It certainly should not be if there were plausible reasons impairing the credibility of the witnesses, or plausible grounds to disbelieve them. 2 Bin. 495; 7 Mass. 261; 10 Mass. 39; 5 Pick. 244.

In this case reasons were urged, and perhaps existed, against the credit of Deruth. He lived near, and was likely to be known to several of the jury, who were thus the best judges of his credibility. And though if believing him fully, the balance of the whole evidence was probably for the defendants, on some of the grounds of defence, yet it was not so clearly and palpably for them as under that objection to Deruth, their principal witness, to justify a disturbance of the verdict. There is, also, in many cases, something in the manner of witnesses, and their character known to the jury, and cognizable by them, and which may lead them, as practical men, to a result different from the views of the court. And though courts, since appeals on facts and reviews have been generally abolished in New England, may, with some propriety, be more liberal in submitting a case to a second jury on motions of this kind, yet it cannot even now be done unless there appears in the verdict such a strong departure from the clear balance of the evidence as to indicate a mistrial and, probably, injustice to one of the parties.

It is natural that counsel and clients should look more favorably than others, on their own testimony and their own side of the case, and think the balance much stronger for them than indifferent judges or juries do. Abating something for that here, the case certainly is one where the difference is not so great between the finding and the weight of evidence as to show injustice to have been clearly done, or a manifest mistrial to have happened. Thus, in respect to the special point where the verdict of the jury is contended to be here so entirely against the weight of evidence, and which relates to the agency of De Wolf to bind the owners, it does not strike me that the testimony was all one way. For though the evidence by the respondent tended to show that De Wolf designed to give only his private credit or responsibility to these plaintiffs, and gave it so in form, yet this was met by other testimony, that he had been their agent on former voyages by this ship; that on this occasion he pledged their credit in some cases, formally as well as in substance; that the respondents had settled for some other purchases made by him for this voyage; and that Deruth, who was the main

witness for the respondents, was, in some things contradicted and his credibility impugned. This whole point, and others connected with it, were consequently open to just inferences, such as the jury have drawn, that De Wolf was in truth their agent in this business, and especially so if they discredited Deruth; although in my view, the weight of the testimony as a whole, was the other way. This verdict, also, though nominally in favor of Fearing & Co., is for articles furnished through them, in part by Hathaway & Co., and in part by Taber. And Fearing & Co. sue in trust for them, and little or no evidence was given that the former firms, however it may have been otherwise with the last one, did not rely on the supposed credit of all the owners, and De Wolf's supposed agency for the whole.

I am anxious and willing to correct all palpable errors in trials, so far as may be done on safe principles in administering justice. But if courts interfere only in clear cases of mistake or abuse it will not only tend to preserve the respect due to the inestimable trial by jury, but elevate the character and responsibility of the jurors themselves. It will make them feel more their due influence, and increase their care and anxiety to come to correct conclusions, when these last are so final and decisive of the rights of parties. It will also give greater power and influence to the judges, because keeping carefully within their own appropriate spheres; and interfering only where, by the law and constitution it was meant they should, their action will always be viewed as remedial, and will be harmonious and satisfactory. There is no other circumstance presented here to show a sound or established ground for setting a verdict aside, and hence, judgment must be rendered upon it.